**Dated: November 03, 2026**
**The following is ORDERED:**

**M. Ruthie Hagan**
**UNITED STATES BANKRUPTCY JUDGE**

---

**UNITED STATES BANRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

In re
**Darrance LaQuann Cain** Case No. 25-25913
Debtor Chapter 13

---

**OPINION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL**

---

This matter is before the Court on the Motion of Landlord Country View Apartments ("Landlord") and its attorneys Glankler Brown, PLLC ("Glankler") (collectively "Movants") [DE 98] to stay enforcement pending an appeal of the Court's prior Opinion and Order Granting Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay [DE 31] and the Court's subsequent Order determining the amount of damages and sanctions [DE 37] incurred as a result of the willful stay violations. The Debtor filed a Response in opposition to the Motion to stay [DE

104] and the Court held a hearing on September 23, 2026, heard the arguments of counsel and took the Motion under advisement at that time.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Accordingly, the Court has both the statutory and constitutional authority to hear and determine these proceedings subject to the statutory appellate provisions of 28 U.S.C. § 158(a)(1) and Part VIII ("Bankruptcy Appeals") of the Federal Rules of Bankruptcy Procedure. This decision constitutes the Court's findings of fact and conclusions of law under FED. R. CIV. P. 52, made applicable to this contested matter by FED. R. BANKR. P. 7052. Regardless of whether specifically referred to in this decision, the Court has examined the submitted materials, considered statements of counsel, considered the testimony given in this matter, considered all of the evidence and reviewed the entire record of the case. Based upon that review, and for the following reasons, the Court hereby determines that Landlord and Glankler's Motion to stay enforcement pending appeal [DE 98] of the Court's prior Orders finding a willful violation of the automatic stay, granting Debtor's motion for sanctions and ordering Landlord and Glankler to pay to Debtor a total amount of $27,516, to be paid 50% by each party, with post-judgment interest at the rate of 3.64% until paid in full [*see* DE 31 & 37] is DENIED.

## DISCUSSION OF BACKGROUND FACTS AND PROCEDUAL HISTORY OF THE CASE

The Court hereby incorporates its findings of facts from its prior Opinions and Order in this case entered as DE 31 and DE 37, and adds the following factual and procedural information. After the Court held an evidentiary hearing on damages and entered its Order determining the damage and sanction award in favor of the Debtor on February 27, 2026 [DE 37], Landlord and Glankler entered a Notice of Appeal to the United States District Court for the Western District of Tennessee [DE 40] on March 6, 2026. Based on the Court's docket sheet, the appellate process

has proceeded along a usual course in the District Court but Movants failed to request from this Court a motion for a stay pending appeal pursuant to the procedure set forth in FED. R. BANKR. P. 8007. As a result, Debtor was free to pursue collection of the Court's judgment. Debtor accordingly filed on July 8, 2026 three (3) Applications for Garnishment/Writ (as amended on July 16, 2026) and the Writs were then issued for garnishment of Glankler's bank accounts in the amount of $13,967.76 — an amount evidencing Glankler's 50% responsibility of Debtor's judgment award plus $209.76 interest accrued from February 27, 2026 to August 5, 2026.

On August 17, 2026, Garnishee First Horizon Bank filed an Answer to the garnishment [DE 86] indicating that it is holding the amount of the judgment attributed to Glankler in an account at the bank. On August 18, 2026, Debtor filed a Motion to Direct First Horizon Bank to Immediately Turn Over Held Funds [DE 87], and on August 20, 2026, Glankler filed a Response [DE 89] in opposition asserting, among other things, that if the Debtor is permitted to collect the judgment debt, Glankler's chances of recouping the funds from the Debtor upon a reversal of this Court's Opinion and Orders would be significantly impaired, and that the "status quo" should be preserved. Glankler's Response in objection to the Debtor's Motion, however, was not a substitute for a Rule 8007 motion for a stay pending appeal, and the Court, in an attempt to clarify any relief requested and to move the proceedings forward, issued a sua sponte Order and Notice of Hearing on August 25, 2026 [DE 93] directing Glankler to file a proper Rule 8007 motion for a stay pending appeal if that was indeed the relief it was seeking in its Response to the Debtor's Motion.

The Court held a hearing on its sua sponte Order on September 2, 2026, at which time the Court expressly directed Glankler's counsel to file the appropriate motion for a stay pending appeal pursuant to Bankruptcy Rule 8007. The Motion was thereafter filed on September 10, 2026 [DE 98], and is now — along with Debtor's Response in opposition [DE 104]— properly before the

Court. The Court held a hearing on the Motion and Response on September 23, 2026, and took this matter under advisement.

Reviewing the statements of facts and arguments set forth in Movants' Motion, and based on Counsel's statements at the hearing on the matter now before the Court, the Court is baffled by Movants' continued assertions that they had no notice of the Debtor's bankruptcy case until after the Debtor was set out of his home. Movants allege:

> The manner in which notice of Cain's Second Bankruptcy allegedly occurred is a central issue in the appeal. Cain listed "Country View Apartments" as a creditor at a street address, without identifying a particular recipient or supplying an email address. Glankler Brown appeared on the Creditor Matrix only by firm name and mailing address. No individual attorney was identified and no email address for Mr. Kahane was provided. The record further demonstrates that the case was not assigned to Mr. Kahane in this honorable Court's electronic system until December 19, 2025 — seven days after the set-out at issue.
>
> Appellants have consistently maintained that neither Country View nor Glankler Brown received actual notice of the Second Bankruptcy before December 12, 2025. Cain likewise filed a Motion to Extend the Automatic Stay on November 17, 2025. Again, Mr. Byrd did not directly provide that Motion to Country View or Mr. Kahane.

Appellants' Rule 8007 Emergency Motion to Stay Enforcement and Distribution of Judgment Funds Pending Appeal, DE 98, pp. 5 – 6 (internal citation footnotes omitted). These allegations are in direct contravention of this Court's findings [DE 31 & 37]. In its Opinion, the Court found that:

> There is no question that Landlord and Glankler Brown had ample notice of this bankruptcy case prior to taking action for possession of Debtor's residence in the General Sessions Court. The bankruptcy court docket discloses that notice of this case and its progress was sent to Landlord and its counsel time after time. Yet Counsel maintains that Debtor's counsel should bear additional responsibility — such as a visit to Counsel's office to drop off documents — for informing it of the bankruptcy filing. Counsel has failed to convince the Court that Glankler Brown should be treated

> differently than other similarly-situated landlord attorneys and provided with a hand-delivered "special delivery" copy of the bankruptcy petition. It is concerning to the Court that Counsel somehow missed numerous email messages from the Bankruptcy Noticing Center providing notices of the filings in this case. The Court finds that Landlord and Glankler Brown had actual notice of the bankruptcy filing prior to continuing with the eviction action in the General Sessions Court, and their actions in prosecuting the eviction constitute a willful violation of the automatic stay. Accordingly and as mandated by Bankruptcy Code § 362(k), the Debtor is entitled to an award of actual damages.

Opinion and Order Granting Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay, DE 31, p. 10.[1] Both Glankler and Landlord — and their respective street addresses for notice — were listed on the Debtor's Creditor Matrix when the Bankruptcy Petition was filed. [DE 1, Creditor Address Matrix].

Pursuant to the mandate of Bankruptcy Code § 362(k), this Court found Debtor entitled to actual damages, and in its discretion found that an award of punitive damages was warranted based on the facts of this case, reasoning that:

> Based on all of the facts presented above, with special emphasis on the fact that Debtor, who took appropriate initiative to schedule both Landlord and Landlord's Counsel in his bankruptcy case, including listing both parties on the Creditor Matrix, was nevertheless partially evicted and put out from his home almost a month after Landlord and Creditor began to receive notices of the bankruptcy docket filings, the Court finds that the post-petition actions of Landlord and Glankler Brown rise to the level of egregiousness, and that they acted in reckless disregard of the protections afforded Debtor by the Bankruptcy Code. The Court encourages Counsel in the future to put safeguards in place in his office to ensure that notices received from the Bankruptcy Noticing Center are documented. For these reasons, the Court finds in its discretion afforded under Code §

[1] Glankler Brown law firm is subscribed to the Bankruptcy Noticing Center's Mandatory Electronic Bankruptcy Noticing ("MEBN") which provides electronic notice via an electronic account hosted by the Bankruptcy Noticing Center ("BNC"). The BNC website specifies for subscribing attorneys that "[i]t is your responsibility to access this website regularly to retrieve any bankruptcy notices sent to you. Your usage of this website constitutes notice in the case(s) that you are a party." *See* https://bankruptcynotices.uscourts.gov/mebn-info, last visited November 2, 2026.

> 362(k), that in addition to actual damages, Debtor is entitled to an award of punitive damages against Landlord and Glankler Brown.

*Id.* DE 31, p. 12.

In his Response to the Motion, Debtor addresses the Movants' alleged lack of notice of this bankruptcy case — which is the crux of Movants' Motion — by pointing to the following undisputed facts:

- Both Country View Apartments and Glankler Brown, PLLC were listed on Debtor's Bankruptcy Petition. (ECF No 1).
- The Bankruptcy Court Clerk issued a Notice of Hearing on Debtor's Motion to Extend the Automatic Stay on November 18, 2025. (ECF No 11).
- The Bankruptcy Noticing Center provided notice of the filing of the Bankruptcy Case by electronic transmission to Glankler Brown via mandatory electronic bankruptcy noticing on November 18, 2025. (ECF No 13).
- The Bankruptcy Noticing Center provided notice of the Notice of Hearing on the Motion to Extend by electronic transmission to Glankler Brown on November 18, 2025. (ECF No 14).
- On November 19, 2025 a Notice of Bankruptcy filing was filed by Debtor's Counsel with the General Sessions Court Clerk by counsel for Debtor.
- The Bankruptcy Noticing Center provided notice of the Bankruptcy filing by first class mail to Country View Apartments, 3990 Stephanie Lane, Memphis, TN 38128 on November 20, 2025. (ECF No 13).
- The Bankruptcy Noticing Center provided notice of the Notice of Hearing on the Motion to Extend by first class mail to Country View Apartments, 3990 Stephanie Lane, Memphis, TN 38128 on November 20, 2025. (ECF No 14).
- The Bankruptcy Noticing Center provided a copy of the Order Extending the Automatic Stay by electronic transmission to Glankler Brown on December 9, 2025. (ECF No 19).
- The Bankruptcy Noticing Center provided a copy of the Order Extending the Automatic Stay by first class mail to Country View Apartments, 3990 Stephanie Lane, Memphis, TN 38128 on December 11, 2025. (ECF No 19).
- On December 12, 2025 Country View through Glankler Brown requested a writ of possession from the General Sessions Court and attached the October 8, 2025, Order lifting the stay in Cain's First Bankruptcy. (ECF No 98 at 6).

> • Country View through Glankler Brown began the process of evicting Debtor from his residence on December 12, 2025.

Response of Debtor to Glankler Brown, PLLC's Rule 8007 Emergency Motion to Stay Enforcement and Distribution of Judgment Funds Pending Appeal, DE 104, p. 3. It is against this factual and procedural backdrop that the Court considers the issues before it.

**LAW AND ANALYSIS**

The Court begins its analysis with the applicable provisions of Bankruptcy Rule 8007, set forth as follows:

> **Rule 8007. Stay Pending Appeal; Bond; Suspending Proceedings**
>
> **(a) Initial Motion in the Bankruptcy Court.**
>
> (1) ***In General***. Ordinarily, a party must move first in the bankruptcy court for the following relief:
>
> (A) a stay of the bankruptcy court's judgment, order or decree pending appeal;
>
> (B) the approval of a bond or other security provided to obtain a stay of judgment;
>
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
>
> (D) an order suspending or continuing proceedings or granting other relief permitted by (e).
>
> ***
>
> **(e) Continuing Proceedings in the Bankruptcy Court.** Despite Rule 7062 — but subject to the authority of the district court, BAP, or court of appeals — while the appeal is pending, the bankruptcy court may:
>
> (1) suspend or order the continuation of other proceedings in the case; or
>
> (2) issue an appropriate order to protect the rights of all parties in interest.

FED. R. BANKR. P. 8007. A bankruptcy court's decision to grant or deny a motion for a stay pending appeal is highly discretionary. *Miller v. Sullivan (In re Wylie)*, 635 B.R. 479, 484 (Bankr. E.D. Mich. 2021) (citations omitted). The moving party bears the burden of proof, by a preponderance of the evidence, that it is entitled to the stay. *Id.* at 483 (citations omitted).

The factors to be applied by bankruptcy courts when deciding whether to grant a stay pending appeal are well established and are set forth by the Sixth Circuit as follows: (1) the likelihood that the movant will prevail on the merits of the appeal; (2) the likelihood that the movant will be irreparably harmed absent the stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Michigan Coal. of RadioActive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153-54 (6th Cir. 1991) (citations omitted). With these factors prescribed, the Court now considers the Motion at bar.

**1. Likelihood that Movant will prevail on the merits of the appeal**

Although the District Court will ultimately determine whether to alter or reverse the judgments now on appeal, this Court finds that there is little probability[2] that its Opinion [DE 31] or Order [DE 37] Granting Debtor's Motion for Sanctions will be overturned. In reaching its decisions, the Court carefully examined and considered the record and pertinent law and authorities before rendering its decision finding Movants' conduct to be a willful violation of the automatic stay and subsequently determining the amount of the damage award. Hearing no new evidence nor argument to give the Court pause, the Court remains confident that its decisions were sound, well-reasoned, correct and therefore likely to withstand appellate scrutiny for all of the reasons stated in its Opinion [DE 31] and Order [DE 37]. Movant has failed to establish, by a preponderance of the evidence, any likelihood of success on the merits of the pending appeal under the facts presented in this case.

[2] "To justify the granting of a stay [pending appeal], a movant need not always establish a high probability of success on the merits. . . . [However], the movant is always required to demonstrate more than the mere 'possibility' of success on the merits.'" *Miller v. Sullivan (In re Wylie)*, 635 B.R. 479, 483 (Bankr. E.D. Mich. 2021) (quoting *Griepentrog*, 945 F.2d at 154). Movants have failed to carry this burden.

The Court notes that it is rare that a debtor's bankruptcy petition lists on the creditor matrix the attorneys who represent the debtor's landlord, as in most cases the debtor is not privy to that information. In this instance, however, Debtor's attorney listed both the Landlord and Glankler Brown, PLLC on the Creditor Matrix in the Debtor's bankruptcy Petition.[3] [DE 1] The Creditor Matrix was served with filings and notices on the Court's docket via the Bankruptcy Noticing Center, as is the usual procedure for each case making up the voluminous caseload currently pending in this Court. Landlord's Counsel, however, argues that it should receive an additional notice above and beyond what the other attorneys in this District receive or what the Federal Rules of Bankruptcy Procedure require. The District Court recently noted in a similar case that

> [e]ach of the three notices that [Landlord] received was sufficient — standing alone — to give [Landlord] actual knowledge of [Debtor's] bankruptcy filing. *It is irrelevant that notice was not directed to [Landlord's] counsel or that notice may have been mailed to [Landlord] without specifying a particular individual or department. It is incumbent on [Landlord] to promptly forward notice to its counsel or the correct internal person or department.* [Landlord] had nearly four weeks to do that, yet it failed to do so. And because [Landlord] had knowledge of [Debtor's] bankruptcy filing, any intentional act or omission that violated the automatic stay is deemed willful. *In re Smith*, 636 B.R. 521, 532 (Bankr. E.D. Tenn. 2021) (citations omitted).

*Southwind Lakes Apts. v. Sanders*, Case No. 2:26-cv-2244-MSN-atc, 2:26-cv-2807-MSN-atc (W.D. Tenn. July 20, 2026) (emphasis added). Based on the facts set forth above and set out in the Court's prior Opinion and Order [DE 31 & 37], it is clear that both Landlord and Glankler began to receive ample notice of this bankruptcy case well in advance of taking possession of the Debtor's residence. Under these circumstances, Movants had a duty to halt all proceedings in the State Court.

[3] Counsel for Movants' confirmed for the Court at the hearing on the Motion that the address for Glankler Brown, PLLC that appeared on the Creditor Matrix was correct.

> [It is] incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.

*In re Webb,* No. 2012 WL 2329051 at *14 (B.A.P. 6th Cir. April 9, 2012) (quoting *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000)). The debtor need not show nor even allege a creditor's specific intent to violate the automatic stay.

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*Id.* at *15 (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)). A creditor's good-faith belief that its intentional actions did not violate the automatic stay is not a defense. *Id.*

Movants also argue that "[t]here is an independent likelihood of reversal of the punitive [damage] award" [*See* DE 98, p. 12] and the sanctions awarded for Movants' willful violation of the automatic stay are excessive and subject to either reversal or reduction. *Id.* The District Court addressed punitive damages in its *Southwind Lakes Apts. v. Sanders* opinion and found that

> [d]espite receiving multiple notices of [debtor's] bankruptcy filing, [Landlord] apparently did nothing to ensure that it did not violate the automatic stay. This may not have been overtly malicious; it may have been due to a failure to employ adequate processes or provide appropriate training to ensure that bankruptcy notices reach the correct individuals or departments. But even if not overtly malicious, excusing such conduct would frustrate the purposes of the automatic stay. Again, [Landlord] was provided notice of [Debtor's] bankruptcy three times by differing methods. And yet, [Landlord] still failed to act for approximately 28 days between its receipt of notice and service of the FED. A reasonable person could

> agree that [Landlord's] failure to act was in reckless disregard of the law, so the bankruptcy court's imposition of punitive damages was not an abuse of discretion.

*Sanders,* Case No. 2:26-cv-2244-MSN-atc, 2:26-cv-2807-MSN-atc at p. 15. This reasoning is applicable to both Movants in the case at bar.

As part of its argument that Movants will likely prevail on the merits on appeal, Movants also challenge Debtor's attorney fee award of $5,300 which was comprised of 13.25 hours expended to prosecute Debtor's Motion at a rate of $400 per hour. Movants assert that "[t]he Sixth Circuit . . . requires a sufficient explanation of the basis for a fee award and recognizes the prevailing market rate as the appropriate benchmark." [DE 98, p. 14] (citing *Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004)). The Court's award was in response to Debtor's Counsel's Affidavit of attorney's fees [DE 34] itemizing his time expended on behalf of the Debtor in prosecuting the Motion for Sanctions for Movants' willful violation of the automatic stay. [DE 20] Pursuant to the mandate to bankruptcy courts prescribed in *Boddy v. U.S. Bankr. Ct. W. Dist. Of Ky., (In re Boddy),* 950 F.2d 334 (6th Cir. 1991), this Court applied a "lodestar analysis" and found that Counsel's hourly rate and time expended were reasonable for the work performed in this case. [DE 37] *Boddy* mandates that, in bankruptcy cases, a lodestar analysis is "made to determine a reasonable hourly rate for the particular attorney handling the case" multiplied by "the reasonable hours worked on the case." *Id.* at 337. The "normal and customary" standard to determine a fee award is not used by bankruptcy courts. *Id.* This Court held a hearing to determine Debtor's damages on February 25, 2026 and Movants filed no response in opposition to Counsel's Affidavit of attorney's fees and declined to question Debtor's Counsel on the witness stand, but reiterated concerns voiced in a prior hearing[4] where Movants' Counsel contended that the fee Affidavit did

---

[4] The hearing in this case immediately followed a similar hearing on damages and attorney's fees in *In re Milner*, Case No. 25-23473.

not "come close to meeting the standards for attorney fees in federal court" and that typically another attorney presents in support an affidavit stating his/her opinion going to the reasonableness of the attorney's fees requested. As the Court has stated and informed Movants' Counsel at the hearing, this is not required under the *Boddy* lodestar analysis prescribed for bankruptcy courts. Debtor's Counsel stated that the Affidavit is accurate and all of the time entries were "backed up by the [Court's] docket." This Court agrees and finds that there is little likelihood that its determination of the reasonableness of Counsel's attorney fees will be reversed on appeal.

Under the facts existing and the applicable law, the Court finds little if any likelihood that Movants will prevail on the merits in their appeal. Accordingly, the Court finds that the first factor weighs against granting Movants' Motion for a stay pending appeal. "The Court's conclusion about this first stay factor is alone fatal to the Stay Motion" under the Sixth Circuit's *Griepentrog* decision, which held that "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [opposing parties] if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *In re Wylie*, 635 B.R. at 484, quoting *Griepentrog*, 945 F.2d at 154 (citations omitted). Nevertheless, the Court will discuss the remaining factors in turn.

**2. <u>Likelihood that Movants will be irreparably harmed absent a stay</u>**

Bankruptcy Courts are directed to consider three (3) factors when considering the irreparable harm element: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *In re Thomas*, 565 B.R. 856, 866 (Bankr. W.D. Tenn. 2017) (citing *Griepentrog*, 945 F.2d at 154 (citations omitted)). The *Thomas* Court went on to state that

> [t]he harm alleged must be both certain and immediate, rather than speculative or theoretical. The United States Supreme Court has said

> that one must remember, when looking at the degree of the harm or injury that "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S. Ct. 937, 39 L.Ed.2d 166 (1974) (citation omitted). Also, "in order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again. *Griepentrog,* 945 F.2d at 154.

*In re Thomas*, 565 B.R. at 866-67.

Regarding the "irreparably harmed" factor, Movants argue that if the Court's judgment award is reduced or reversed altogether on appeal, it would put Movants in the difficult position of "[pursuing] repayment from a Chapter 13 debtor who has already represented that he currently lacks sufficient funds to satisfy his bankruptcy obligations. The harm therefore is not simply payment of monetary judgment. It is the destruction of an existing, secure status quo and substitution of a potentially uncollectible restitution claim." [DE 98, p. 15] This argument is precisely addressed by the language of the Supreme Court's decision in *Sampson v. Murray* cited above: "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, *in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."* 415 U.S. at 90 (emphasis added). Movants have failed to allege any "irreparable harm" other than the inconvenience or risk associated with recouping any funds paid to Debtor pursuant to this Court's prior Opinion and Orders. In the event Movants are faced in the future with the prospect of attempting collection from the Debtor, this Bankruptcy Court has observed that as a general rule, creditors — especially with the assistance of competent counsel — are well versed and adept

at collection actions in this Court and others. This Debtor presents no greater collection risk than any number of defendants in Shelby County that might find themselves on the losing side of a monetary judgment.

For the reasons stated herein, the Court finds that Movants have failed to establish the "irreparable injury" factor by a preponderance of the evidence.

**3. Harm to others if the Court grants the stay**

Movants contend that this factor weighs in their favor because "[a] stay does not extinguish [Debtor's] rights, remove assets beyond his reach, or require him to begin collection anew after appeal. It simply postpones distribution until the [District] Court determines which party is legally entitled to the money. By contrast, immediate distribution places the entire risk of reversal upon [Movants]." [DE 98, p. 16] As Debtor's Counsel points out in his Response, however,

> [c]reditors ignore that the Debtor who is currently in a Chapter 13 bankruptcy case has already suffered the consequences of Creditors' actions, when no risk should have existed. A realization of the judgment awarded by this Court would without question help to eliminate his financial burdens. Creditor on the other hand routinely and successfully files collection actions in numerous courts.
> Creditors argue, ironically, that they may be forced into additional proceedings should they prevail, and that those potential proceedings are entirely avoidable. Mr. Cain may feel the same about the injuries he sustained nearly eleven (11) months ago. The injuries sustained by Debtor are not hypothetical. They've occurred. Debtor's property was damaged and he was removed from his residence due to the Creditor's actions while the automatic stay was in place. The harm that has been done is neither speculative nor theoretical. The potential harm to Creditors is the necessity of theoretical collection.

DE 104, pp. 8-9. The Court agrees with the Debtor's position and also notes that there was nothing in place in this Court to stop the Debtor from collecting on the judgment because Movants failed

to file any motion to stay and only did so when the Court scheduled a sua sponte hearing and directed the Movants to file the Rule 8007 Motion which is now before it.[5]

The Debtor's Chapter 13 bankruptcy case has not yet reached the discharge and he is attempting, through relief from this Court, to reap the benefits of the fresh start intended by the Bankruptcy Code. A realization of the monetary judgment awarded in Debtor's favor by this Court would undoubtedly help to eliminate Debtor's financial burdens and uncertainty, and would substantially benefit Debtor's creditors. The Court finds that Debtor would be the party harmed if the Court grants Movants' Motion for a stay pending appeal, and this factor therefore tilts the scales against granting the Motion.

**4. <u>Public Interest in Granting the Stay</u>**

Debtor's Counsel argued at the hearing on this matter that, if Movants are granted a stay pending appeal after their willful violations of the automatic stay, the automatic stay afforded to bankruptcy debtors would be rendered useless. In this case, Counsel argued, due to the actions of Movants, there was — in effect — no automatic stay. The legislative history of the Bankruptcy Code outlines the reasoning for this central tenet of bankruptcy law:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

[5] The Court issued its Opinion and Order finding Movants in willful violation of the automatic stay on February 12, 2026 [DE 31], held an evidentiary hearing on damages on February 25, 2026 and issued its Order awarding the judgment in Debtor's favor on February 27, 2026. [DE 37] On March 4, 2026, the Court granted Movants' Motion to extend the deadline for an appeal [DE 39] and Movants filed their Notice of Appeal on March 6, 2026. [DE 40] Movants chose not to file their Motion for a stay pending appeal until prompted by the Court, and the Motion was not filed until September 10, 2026 — after the Debtor was forced to garnish Glankler's bank account.

H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97. The Court finds that the public interest is best served by respecting the substance and the purposes of the automatic stay.

Further, "the timely and efficient administration of court proceedings serves the public interest and there is a 'great public policy' in ensuring bankruptcy cases continue to an orderly and efficient resolution." *In re Session*, 622 B.R. 102, 108 (Bankr. S.D. Ala. 2020) (citations omitted). In addition, "the prompt and efficient resolution of cases is in the public interest. Such goal is not served by unnecessarily prolonged litigation. . . . Unwarranted delay and appeals have the potential to burden courts, needlessly occupy dockets, waste limited judicial resources and prejudice litigants." *Id.* This Court agrees. The appeal pending in the District Court is likely to extend for an undetermined amount of time, undermining the Chapter 13 Debtor's fresh start and the goals and purposes of the Bankruptcy Code.

Movants have failed to establish any public interest to be served by institution of a stay pending this appeal. The Court accordingly finds that the public interest factor weighs in support of denying Movants' Motion for a stay pending appeal.

## **CONCLUSION**

Based on the facts presented and reasons set forth above, the Court finds that Movants' Motion [DE 98] for a stay pending the appeal of the Court's Opinion [DE 31] and Order [DE 37] is DENIED. The Bankruptcy Court Clerk shall serve a copy of this Opinion and Order on the following interested parties:

Mr. Darrance LaQuann Cain
3996 Ann Arbor Ct #6
Memphis, TN 38128

Mr. James E. Bailey, III, Esq.
Butler Snow LLP

6075 Poplar Avenue, Suite 500
Memphis, TN 38119

Mr. Arthur Byrd, Jr., Esq.
Law Office of Arthur A. Byrd, Jr.
116 Mulberry
Collierville, TN 38017

Mr. S. Joshua Kahane, Esq.
Glankler Brown, PLLC
6000 Poplar Avenue, Suite 400
Memphis, TN 38119

Ms. Sylvia F. Brown, Esq.
Chapter 13 Trustee
200 Jefferson Avenue, Suite 1113
Memphis, TN 38103

United States Trustee
Office of the United States Trustee
200 Jefferson, Suite 400
Memphis, TN 38103